ORIGINAL

1

```
 1                IN THE UNITED STATES DISTRICT COURT
 2              FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
 3

 4    UNITED WISCONSIN INSURANCE COMPANY,)
      d/b/a UNITED HEARTLAND, INC.,      )
 5                                       )
                                         )
 6              Plaintiff,               )
                                         )
 7       vs.                             ) No. 07 C 6315
                                         )
 8    TEMPERATURE EQUIPMENT CORPORATION  )
      and MATTHEW HETZEL,                )
 9                                       )
                Defendants.              )
10

11

12            The deposition of DENNIS HULETT, called by

13    the Defendant for examination, pursuant to notice and

14    pursuant to the Rules of Civil Procedure for the

15    United States District Courts pertaining to the taking

16    of depositions, taken before Erin McLaughlin, CSR, at

17    221 N. LaSalle Street, Suite 1414, Chicago, Illinois,

18    on July 7, 2008, commencing at the hour of 10:35

19    o'clock a.m.

20

21

22    Reported for
      LAKE SHORE REPORTING SERVICE, by
23    Erin McLaughlin, CSR

24
```

Exhibit A

46

1    A   Peripherally, yes.
2    Q   Along with Ms. Bailey and Mr. Cagle?
3    A   Correct.
4    Q   And what was the reason for denying
5  coverage?
6    A   Basically two reasons. Two policy
7  provisions were not followed. One, we did not receive
8  immediate notice of the loss; and, Number 2, payments
9  had been made towards the Worker's Compensation claim,
10 rather large payments over a number of years.
11   Q   Any other reasons for the denial of
12 coverage?
13   A   Those are the two that come to mind.
14          (Hulett Deposition Exhibit No. 7
15           was marked for identification.)
16   Q   I'm handing you what has been marked as
17 Hulett Deposition Exhibit Number 7, and it's Bates
18 numbers 00001 through 000027, and it's been
19 represented to me by United Insurance that these are
20 the Worker's Compensation policies provided to TEC
21 from May 1, 2003 to May 1, 2004 issued by United
22 Wisconsin along with the attached endorsements.
23 That's Policy Number 0700005338.
24          Would you take a look at 7, Mr. Hulett,

47

1  and tell me if that's correct?
2    A   It appears to be correct.
3    Q   And that appears to be the policy issued
4  to TEC by United Wisconsin; correct?
5    A   Yeah. I would agree.
6    Q   Do you know what the time period covered
7  by this policy is?
8    A   It looks to be June 15th, 2000 -- Well,
9  let's go back to the dec page just to be sure.
10 5/1/2003 to 5/1/2004.
11   Q   So would you agree, Mr. Hulett, that apart
12 from the timeliness issue, the loss, the Worker's
13 Comp. loss was within the policy period?
14   A   That is correct.
15   Q   Now, where in the policy does it describe
16 the insured's notice obligations that --
17   A   That's Part 4, your duties if injury
18 occurs.
19   Q   Is that the part of the policy, Part 4, is
20 that the part of the policy that United based its
21 decision on denying coverage with respect to the
22 timeliness issue?
23   A   That is correct.
24   Q   May I have that back if you don't mind

48

1  sharing with your counsel.
2          I'm directing your attention to Bates
3  Page Number 25 and Part 4. And Part 4 you would agree
4  goes onto the next page as well?
5    A   That's correct.
6    Q   And does Part 4 describe all of the
7  insured's obligations with respect to notice?
8    A   I believe that is the only section where
9  it's noted.
10   Q   So there is no other section in the
11 policies or in the endorsements that have to do with
12 the insured's obligations for notice?
13   A   I wouldn't notice that until I read every
14 single one of them again. This is the one I
15 referenced knowing specifically.
16   Q   Are you familiar with this insurance
17 policy?
18   A   I am familiar with it, yes.
19   Q   Is this a standard insurance policy,
20 Worker's Comp. policy that United issues?
21   A   Yes. It is.
22   Q   Are you aware of any other notice
23 provision in the policy?
24   A   Without reading it word for word, I

49

1  couldn't say that.
2    Q   We can take time. I want you to identify
3  the notice provision that United is alleging that --
4    A   We reserve the rights for Part 4.
5    Q   For Part 4?
6    A   Right.
7    Q   So as far as you are concerned, there is
8  no other notice provision that --
9    A   I didn't say that. I just said we reserve
10 the rights for Part 4.
11   Q   Well, then I'd like you to look at what
12 other notice provisions may be in the policy that
13 United may claim or has claimed that TEC did not meet
14 with respect to the Hetzel claim. We can go off the
15 record, and you can take your time.
16   A   All right.
17          The only sections I can see where
18 time might come into play in addition to what we have
19 already cited would be on the notice page where the
20 insured's asked to give us notice within -- he has 45
21 days to give notice
22   Q   That's 45 days to give notice
23 to Worker's?
24   A   To the employer.

Page 50

```
 1    Q    To the employer?
 2    A    Right.
 3         I guess you can potentially make an
 4   argument that if the facts applied that subrogation
 5   would have hampered the lack of timely notice and then
 6   also with collecting premiums and subsequent review
 7   periods.
 8    Q    Do you know if any of those other notice
 9   provisions that you just have referred to were relied
10   on by United Heartland in making its decision?
11    A    No.  The only one that would come into
12   play potentially I suppose would be 45 to the insured,
13   but it's a fact.  I don't know if it would make any
14   difference with the coverage.
15    Q    So it's fair to say that Part 4 is the
16   notice provision that United has relied on?
17    A    Uh-huh.
18    Q    Yes?
19    A    Yes.
20    Q    If you look at Part 4 on Bates Page
21   Number 25, would you read for us the notice provision
22   that United is relying on in this case, please?
23    A    Tell us at once if injury occurs that may
24   be covered by this policy.  Your duties are listed
```

Page 51

```
 1   here.
 2    Q    Your other duties are listed here?
 3    A    Uh-huh, right.
 4         And that basically can apply the
 5   question of timeliness to, what, 2, 3, 5 -- let's see,
 6   yeah, 5, potentially depending upon the fact pattern
 7   and Number 6?
 8    Q    In this case United's position is that TEC
 9   did not notify them at "once."  Would that be a fair
10   statement?
11    A    That's the most specific phrase, yes.  You
12   would look at the reasonable and prudent man theory as
13   well.
14    Q    We'll get into that, but I didn't make the
15   decision.  I'm asking what you and your staff did.
16    A    Yes.
17    Q    And so you and you staff relied on the
18   "at once" language; is that correct?
19    A    Yes.
20    Q    There are exclusions in this policy as
21   well; correct?
22    A    Correct.
23    Q    The exclusions have nothing to do with the
24   reasons for the denial of coverage in this case; is
```

Page 52

```
 1   that correct?
 2    A    I don't believe so.  I have to review
 3   them.
 4    Q    The language you just read -- and I'm
 5   going to read it again -- "tell us at once if injury
 6   occurs that may be covered by this policy," what does
 7   at once mean?
 8    A    I would expand upon that to be reasonable.
 9   That varies case by case.
10    Q    And how does it vary case by case?
11    A    You have to look at each case's individual
12   fact pattern and make a determination.
13    Q    So the at once in your experience with
14   this policy at United Wisconsin, what's the time range
15   of at once?
16    A    I can't give you an exact time range.
17   Again, it's fact specific to each case and the facts
18   that we uncover.
19    Q    Can some facts require that at once be
20   within 24 hours?  Is it possible?
21    A    Oh, sure.
22    Q    Are there some facts that might -- that
23   six months might be at once?
24    A    I won't rule it out.  Again it would be
```

Page 53

```
 1   based upon facts.
 2    Q    And similarly, two years after a loss
 3   there might be some facts that would make it timely
 4   under the at once?
 5    A    I won't rule anything out.
 6    Q    Now, does it say anywhere in the policy
 7   for the insured to read and know what United's case by
 8   case evaluation of at once is?
 9    A    I would look to them to tell us the at
10   once part.
11    Q    Now, at once refers to something.
12   It means they're supposed to tell you at once whenever
13   that is.  It could be 24 hours or two years, but at
14   once when the insured learns about something; correct?
15    A    I would think the insured would have to
16   learn about, correct.
17    Q    Because that's what triggers the at once;
18   correct?
19    A    I would say that's probably pretty
20   accurate in most cases, but it would be fact specific.
21    Q    What is it the insured is supposed to know
22   or learn that would trigger the at once language?
23    A    That an employee was injured or allegedly
24   injured during the course of their employment.
```

### Page 54

1  Q   So the insured would have to know that
2  employee is making a claim that they have been injured
3  as a result of their work?
4  A   Correct.
5  Q   What facts do you know in this case
6  regarding the Hetzel claim that would indicate when
7  TEC learned that he was injured as a result of work or
8  making that claim?
9  A   I don't have any specific recollection.
10 I know again with the investigation we would have
11 contacted the employer, the employee and the medical
12 providers; and with what we gathered, an opinion was
13 reached that they did have notice and it wasn't
14 reported timely.
15 Q   But you don't remember when any of those
16 facts are?
17 A   Not specifically, no.
18 Q   Who might remember those specific facts?
19 A   Well, Bob Cagle might, but he's no longer
20 with us. Barbara might recall some facts; but she's
21 in the same boat that I would be, that she's been away
22 from it for a while particularly if it was reassigned
23 to somebody else.
24     MR. KARMEL:   Counsel, in addition to

### Page 55

1  Miss Bailey, would you identify for us what other
2  individuals at the regional claims office might have
3  information related to that issue?
4      MS. KNIGHT:   I think that's outside of the
5  scope of today's deposition, but we can certainly
6  follow up on any additional discovery issues that you
7  have.
8      MR. KARMEL:   Right.
9  Q   Now, you mentioned earlier that most
10 claims are reported timely. I think that's what you
11 said.
12 A   I never said a statement like that. We
13 talked about what at once was, and it varies case by
14 case.
15 Q   Okay. I guess my question is has United
16 Wisconsin applied this interpretation of the at once
17 provision in a uniform way do you think?
18 A   Yes.
19     MR. KARMEL:   I'm going to request -- and we
20 hadn't done this previously -- copies of declination
21 letters from United Wisconsin to any insured for the
22 last three years related to a timeliness issue.
23     MS. KNIGHT:   As I said, I think those discovery
24 requests are outside of the scope of this deposition,

### Page 56

1  but we can certainly follow up on any discovery issues
2  outside of the deposition.
3      I'm not sure why each of these requests
4  need to be on the record in this deposition, but we
5  will certainly cooperate in following up on what
6  discovery needs to be done.
7      MR. KARMEL:   Okay. Well, the reason I put some
8  of these on the record is because some of them were
9  previously requested and not produced; but we will
10 follow up on that.
11 Q   So you would agree, Mr. Hulett, that when
12 the insured becomes aware that a claim is work related
13 that at once provision gets triggered?
14 A   I would agree.
15 Q   If you look at Item Number 2 under Part 4,
16 would you agree that TEC has provided United Insurance
17 with names, addresses of the injured persons and/or
18 witnesses or other information that United needed?
19 A   To the best of my recollection, TEC has
20 cooperated with us after the claim was reported.
21 Q   And the same with Number 3 in Part 4, has
22 TEC to the best of your knowledge given you notice of
23 all demands in the legal claims in this case?
24 A   To the best of my knowledge they had the

### Page 57

1  application fairly quickly after it was filed.
2  Q   And Number 4 as well in Part 4, to the
3  best of your knowledge, TEC's cooperated with United
4  Wisconsin in its investigation?
5  A   I believe so.
6  Q   Are you aware of anything that TEC has
7  done to interfere with your right to subrogate this
8  claim?
9  A   Not to my knowledge as of today's sitting.
10 The main thing there is subrogation except for the
11 fact that the two-year statute had passed if something
12 had occurred on that date because you only have two
13 years to file a subro action.
14 Q   Are you aware of any potential subro
15 action out there?
16 A   I'm not aware of any at this time.
17 Q   Do you know if the investigation revealed
18 any particular subrogation action that might have
19 existed and was lost?
20 A   I don't recall any.
21 Q   Now, if an an insured pays for medical
22 claims that later turn out to be work related or may
23 have been work related, is that an automatic reason
24 for denial of coverage?