

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED WISCONSIN INSURANCE CO., d/b/a UNITED HEARTLAND, INC., Plaintiff, v. TEMPERATURE EQUIPMENT CORP.; and MATTHEW HETZEL, Defendants. | Case No. 07 CV 6315<br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This case concerns an insurance coverage dispute between Plaintiff United Wisconsin Insurance Company, d/b/a United Heartland, Inc. ("United Heartland"), and Defendants Temperature Equipment Corporation ("TEC") and Matthew Hetzel ("Hetzel"). Pending before the Court are the cross-motions for summary judgment of United Heartland (Docket No. 44) and TEC (Docket No. 40). For the reasons stated below, both motions are denied.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is

1

insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). That is, the non-moving party must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

The following undisputed background facts are derived from the parties' filings of record, including their filings pursuant to Local Rule 56.1.[1]

United Heartland is a workers' compensation carrier and a Wisconsin corporation. TEC is an Illinois corporation. Hetzel is, and at relevant times was, an employee of TEC and an Illinois resident. (United Heartland Resp. to TEC's SMF, ¶¶ 3-5.)

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

United Heartland issued a policy of workers' compensation insurance to TEC, providing coverage from May 1, 2003 to May 1, 2004, Policy Number 0700005338, with a $500,000 limit for bodily injury per each accident for each employee. (TEC Resp. to United Heartland's SMF, ¶ 6.) The Policy provides under Part Four as follows:

> YOUR DUTIES IF INJURY OCCURS
>
> Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.
>
> 1. Provide for immediate medical and other services required by the workers compensation law.
>
> 2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.
>
> 3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.
>
> 4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.
>
> 5. Do nothing after an injury occurs that would interfere with our right to recover from others.
>
> 6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

(TEC Resp. to United Heartland's SMF, ¶ 7.)

Hetzel allegedly suffered a back injury on April 4, 2004. Hetzel first talked to TEC's Human Resource Manager, Renee Caldarazzo, regarding his back condition in April 2004. Hetzel wanted to go to a clinic, and Caldarazzo approved it. (TEC Resp. to United Heartland's SMF, ¶ 13.) TEC subsequently paid all of Hetzel's medical bills related to his back condition from April 2004 to December 2006. (United Heartland's Resp. to TEC's SMF, ¶ 9.) TEC paid approximately $75,000 in medical bills. (TEC

3

Resp. to United Heartland's SMF, ¶ 15.) TEC voluntarily decided (in accordance with its own internal policy of paying the medical expenses of employees out of pocket) to pay Hetzel's bills rather than send them to the health insurance carrier. (TEC Resp. to United Heartland's SMF, ¶ 16.) TEC also paid Hetzel his full salary while he was off work. (TEC Resp. to United Heartland's SMF, ¶ 18.)

In addition to paying bills that Hetzel gave her, Caldarazzo also had correspondence and communications with Hetzel's medical providers and approved various medical procedures for Hetzel's back condition, beginning in 2004. (TEC Resp. to United Heartland's SMF, ¶ 32.)

TEC received health insurance claim forms for services rendered by Dr. Amjad Akhtar of Ingalls Occupational Health, listing dates of service in April 2004, with a diagnosis of lumbar sprain/strain, first symptom or injury on February 9, 2004. In box 10 of the forms, the following question was asked: "Is patient's condition related to: a: EMPLOYMENT?" The "YES" box was checked. TEC received health insurance claim forms for services rendered by Dr. Akhtar and Ingalls Occupational Health, with dates of service in February and March 2005, with a diagnosis of lumbar sprain/strain, first symptom or injury on January 31, 2005. Again, in box 10 of the forms, the "YES" box was checked in response to the question "[i]s patient's condition related to employment." (TEC Resp. United Heartland's SMF, ¶¶ 21-24.)

TEC received similar health insurance claim forms for services rendered at Ingalls Occupational Health and Ingalls Memorial Hospital with dates of service in March, April and May of 2006 with a diagnosis of low back pain, first symptom or injury January 31, 2006. (TEC Resp. United Heartland's SMF, ¶ 25.)

In addition to receiving these health insurance claim forms, Caldarazzo at TEC received various facsimile communications from Hetzel's doctors in 2006. (TEC Resp. United Heartland's SMF, ¶¶ 26-27.) In particular, on May 11, 2006, Caldarazzo received a facsimile transmission cover sheet from Dr. George Miz at Bone & Joint Physicians, requesting "written work comp approval" for a decompressive laminectomy for Hetzel. On May 12 and June 6, 2006, Caldarazzo authorized Dr. Miz to perform the decompressive laminectomy and asked that the bills be sent to her. (TEC Resp. to United Heartland's SMF, ¶ 27.) Hetzel had back surgery in June 2006. (TEC Resp. to United Heartland's SMF, ¶ 30.)

Sometime in 2006, however, TEC stopped making payments to Hetzel because of the combination of factors of the length of time they had been making payments to him and the amount of overall payment. (TEC Resp. to United Heartland's SMF, ¶ 31.)

On April 4, 2007, Hetzel filed an Application for Adjustment of Claim with the Illinois Workers' Compensation Commission. The date of loss stated by Hetzel on the claim form was April 7, 2004. (TEC Resp. to United Heartland's SMF, ¶ 33.)

When Hetzel's Application for Adjustment of Claim was served on TEC in April 2007, Caldarazzo told her assistant, Will Peterson, to handle it. TEC forwarded the claim to United Heartland sometime in April of 2007. United Heartland received the claim on April 26, 2007.

United Heartland sent a reservation-of-rights letter to TEC on July 27, 2007. According to United Heartland, there were two reasons for denying coverage: (1) United Heartland did not receive immediate notice of the loss; and (2) payments had been made by TEC. (TEC Resp. to United Heartland's SMF, ¶ 40.) United Heartland's reservation of rights letter stated that other grounds may exist under the Policy for denying coverage but that United Heartland would continue handling the claim even though a coverage question existed.

In November 2008, United Heartland filed this diversity action, seeking a declaratory judgment that it owes no duty to defend or indemnify TEC under the Policy.

## ANALYSIS

United Heartland contends summary judgment should be entered in its favor because TEC failed to meet valid prerequisites to coverage under the Policy, specifically, the notice provision in Part Four, stating "tell us at once if injury occurs that may be covered by [the] policy" and "[p]romptly give us all notices, demand and legal papers related to the injury, claim, proceeding or suit."

United Heartland relies on Illinois case law for the general proposition that an insured's failure to satisfy a notice requirement contained in an insurance policy absolves the insurer of its contractual duties under the policy. *See Northbrook Property & Casualty Ins. Co. v. Applied Systems, Inc.*, 729 N.E.2d 915, 921 (Ill. App. Ct. 2000) ("Where the insured fails to comply with a notice provision, the insurer will be relieved from its duties to defend and indemnify under the policy.") (*Northbrook*).

In *Country Mutual Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 346 (Illinois 2006) (*Livorsi*), the Illinois Supreme Court held that even if there is no prejudice to the insurer, a policyholder still must give "reasonable notice." Prejudice to the insurer, however, is one factor to be considered in determining whether the notice was "reasonable." *Id.* Other factors in determining reasonableness include: the specific language of the policy's notice provision, the insured, the insured's sophistication in commerce and insurance matters, the insured's awareness of an event which may trigger insurance coverage, and the insured's diligence in ascertaining whether policy coverage is available. *Id.* at 343.

The determination of the diligence of the insured in providing notice to the insurer is typically a question of fact. However, the issue may be properly resolved as a matter of law where the material facts are not in dispute. *See Northbrook*, 729 N.E.2d at 921.

United Heartland contends TEC's notice to it in April 2007 was unreasonable as a matter of law. It contends that TEC was on notice that Hetzel considered his injury work-related by virtue of the undisputed multiple medical insurance claim forms TEC

7

received regarding Hetzel's treatment beginning in 2004 and the facsimile communication Caldarazzo received from Dr. Miz in 2006. United Heartland contends that, at the very latest, TEC was on notice of Hetzel's claim in the spring of 2006, when Caldarazzo received the facsimile from Dr. Miz requesting "written work comp approval" for Hetzel's decompressive laminectomy.

Furthermore, United Heartland contends it was prejudiced by TEC's delay of at least twelve months in notifying it that medical providers were seeking authorization for medical procedures on one of TEC's employees. It asserts the delay precluded United Heartland from investigating the claim on a timely basis to determine if it was a claim owed under the laws of workers' compensation and was "deprived of the opportunity of putting a medical case manager on the file to limit Hetzel's lost time and to monitor and limit Hetzel's medical care."

TEC opposes United Heartland's motion and contends summary judgment should be entered in its favor that it is entitled to coverage under the Policy. It contends it is entitled to summary judgment because what is required regarding notice under the Policy is ambiguous. Second, it argues United Heartland's motion should be denied because TEC did not learn that Hetzel was asserting a work-related claim until he filed a claim with the Illinois Workers' Compensation Commission in April 2007 and promptly gave notice to United Heartland thereafter. Finally, it argues that any failure of TEC to give United Heartland prior notice is excused by lack of prejudice to TEC.

Regarding its ambiguity argument, TEC contends the language in the Policy "tell us at once if an injury occurs that may be covered by this policy" is ambiguous because "at once" is not specifically defined in the Policy and is susceptible to multiple interpretations. TEC relies on deposition testimony of United Heartland's Regional Claim Manager, Dennis Hulett ("Hulett").

Hulett testified that while he would not "rule out" any specific time range for providing notice, the Policy's requirement that the insured "tell us at once" varies case by case. The duty to provide notice is triggered when the insured "learns" of a covered injury, and the notice must be "reasonable" according to the "individual fact pattern" of each case. (Hulett Dep. at 52-53.)

TEC contends the triggering event for the insured's duty to notify is when the insured learns of a workers' compensation claim. Applying this interpretation, "at once" can mean any time from immediately to between six months to twenty-four months after an injury, or longer. Thus, "at once" is a contextual term that requires the insured to give notice at some point after learning of a covered injury; and TEC's notice upon learning of Hetzel's claim in April 2007 was proper notice.

However, United Heartland disputes that the term "at once" is ambiguous and disputes TEC's interpretation of Hulett's testimony. United Heartland contends the Policy's notice requirement would be interpreted under Illinois law to require notice within a reasonable time, as courts have construed similar notice provisions. Therefore, issues of fact exist as to when the provision in the Policy becomes operative and as to the application of the provision to the specific facts presented in this case.

Moreover, there are also genuine issues of material fact as to whether TEC's notice to United Heartland in April 2007 was reasonable under the factors applied by Illinois courts. First, there is a genuine issue of material fact as to when TEC became aware that Hetzel claimed his back condition was work-related, triggering TEC's obligation to notify United Heartland. As noted above, it is undisputed that TEC received multiple medical claim forms regarding Hetzel's condition beginning in 2004, where the answer "yes" was checked in response to the question "[i]s patient's condition related to employment." Further, the evidence is undisputed that Caldarazzo received the facsimile communication from Dr. Miz in the spring of 2006, asking for "written worker comp approval" for a decompressive laminectomy for Hetzel and approved the procedure. Nevertheless, despite this evidence, Caldarazzo testified in her deposition that her first indication that Hetzel believed his injury was work related was in April 2007, when Hetzel actually filed his formal workers' compensation claim. (Caldarazzo Dep. p. 19.) She asserted in an affidavit that she did not understand the health insurance forms submitted to her by the various medical providers to mean Hetzel's back condition was an on-the-job injury. She points out that the various claim forms state many different dates as the date of the illness or injury involved. (Caldarazzo Aff. II, ¶ 9.) She asserted she understood Dr. Miz's 2006 facsimile simply "to be requesting an authorization from TEC that it would pay for the laminectomy procedure"; she did not acknowledge, in approving the procedure, that Hetzel's claim was work-related when she authorized payment. (*Id.* ¶ 4.)

United Heartland contends Caldarazzo's affidavit is self-serving, and her contention that she was not aware until 2007 that Hetzel claimed his condition was work-related is neither credible nor reasonable in light of the "documentary evidence of a possible workers compensation claim." However, United Heartland has not demonstrated that Caldarazzo's deposition or affidavit testimony is inadmissible. Caldarazzo's testimony and credibility create triable issues of fact as to when TEC became aware of Hetzel's workers' compensation claim and whether TEC's notice in the spring of 2007 was reasonable.

There is also a material issue as to whether and to what extent United Heartland was prejudiced by the timing of TEC's notice. As noted above, lack of prejudice to an insurer does not necessarily excuse an insured's failure to provide timely notice; but prejudice is one factor to be considered in determining whether an insured has fulfilled a policy condition requiring reasonable notice. *See Livorsi*, 856 N.E.2d at 346. United Heartland asserts that it suffered prejudice because it was prevented from investigating the claim on a timely basis to determine if the claim was owed under the laws of workers' compensation; in addition, it was deprived of the opportunity to put a medical manager on the file to limit Hetzel's lost time and monitor his medical care. TEC disputes that United Heartland suffered prejudice, pointing to testimony by Hulett that United Heartland could have conducted a retrospective review of the handling of Hetzel's claim to determine if the injury was compensable under the laws of workers' compensation. (Hulett Dep. at 63-64; 71-72.) Again, United Heartland disputes TEC's interpretation of Hulett's testimony, but it does not point to undisputed facts in the record

demonstrating that it suffered prejudice. It merely states that it lost the ability to investigate and manage the claim and fails to identify any specific detriment caused by its inability to do so. This is insufficient, standing alone, to show prejudice. Accordingly, a genuine issue of fact exists on this point.

## CONCLUSION

For the reasons stated above, genuine issues of material fact exist as to whether TEC fulfilled its obligations under the Policy's notice provisions. Neither party is entitled to summary judgment; United Heartland's and TEC's motions for summary judgment are both denied.

Date: March 11, 2009

JOHN W. DARRAH
United States District Court Judge